UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-06505-SK Date: February 14, 2025

Title Network Optix Inc., et al. v. Marco Rubio

Present: The Honorable: Steve Kim, United States Magistrate Judge

| Connie Chung | n/a |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| None present | None present |

**Proceedings:** (IN CHAMBERS) **ORDER DENYING DEFENDANT'S MOTION TO DISMISS [ECF 14]**

Plaintiffs Network Optix Inc. and Sergei Iuldashev sue defendant Marco Rubio in his capacity as Secretary of the United States Department of State for violating the Administrative Procedure Act (APA).[1] In July 2022, the United States Citizenship and Immigration Service (USCIS) approved Network Optix's H-1B nonimmigrant visa petition filed on behalf of Iuldashev, a Russian national who had been working for Network Optix under a prior H-1B visa. Pursuant to that approved petition, Iuldashev applied for a new visa and scheduled his consular interview at the United States Embassy in Belgrade, Serbia. An official at the embassy interviewed Iuldashev in February 2024. At the end of the interview, Iuldashev was asked to provide more information in support of his application and told that it needed further "administrative processing"; however, he was not told that the application was deficient or that he was ineligible to receive the H-1B visa because of any information in the application.[2] Iuldashev quickly provided the requested information along with a declaration by

[1] Secretary of State Marco Rubio is substituted for former Secretary of State Antony J. Blinken. *See* Fed. R. Civ. P. 25(d).

[2] These allegations must be taken as true and construed in the light most favorable to plaintiffs. *See Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).

Network Optix's CEO that the company would lose $30,000 each week it could not employ Iuldashev in the United States. But six months passed with no other action on Iuldashev's visa application, and the consulate evidently provided no response to plaintiffs' inquiries about when (or whether) it would be either granted or denied.[3]

As a result, plaintiffs sued here in August 2024 under the APA, claiming that the State Department has either unlawfully withheld or unreasonably delayed adjudication of Iuldashev's H-1B visa application. *See* 5 U.S.C. § 706(1). They also claim in the alternative that the State Department has improperly adjudicated the application in violation of the Immigration and Nationality Act (INA) or without following the State Department's regulations. *See* 5 U.S.C. § 706(2). For his part, Secretary Rubio moves to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim on which relief may be granted under Rule 12(b)(6). (ECF 14). None of his arguments, however, supports dismissal of the entire action on the face of the complaint. Besides, the Secretary does not challenge plaintiffs' separate APA claim under § 706(2) uniquely on its own terms.[4] One way or another, then, the Secretary must answer the complaint (even if only in part) and proceed to fact discovery.

---

[3] Another Network Optix employee, Alexander Krasov, was also a named plaintiff when the complaint was first filed. But a few weeks after the court's hearing on defendant's motion, the State Department granted Krasov's H-1B visa application, which like Iuldashev's had been effectively deferred pending "administrative processing." (ECF 1 at 4, 9, 11, 12; ECF 23). Thus, plaintiffs have voluntarily dismissed Krasov since his APA claims are now moot. (ECF 26).

[4] Instead, the Secretary analytically conflates plaintiffs' distinct APA claims into a single "delay claim" under § 706(1). But contrary to the Secretary's assertion, plaintiffs' claim under § 706(2) is not indistinguishably coextensive with the claim under § 706(1). (ECF 14 at 29 n.6). Each challenges different sides of the Secretary's chimeric litigation position. If he maintains that a visa has been legally "refused" if not issued by the end of a consular interview, plaintiffs sue under § 706(1) to claim that a merits adjudication of the visa application remains unlawfully withheld or unreasonably delayed no matter how the Secretary characterizes the relevant agency action. If, on the other hand, the Secretary contends that a visa refusal subject to administrative processing is the only final agency action that any applicant can legally expect, plaintiffs sue to claim that such method of refusal is not "in accordance with law," in "excess of statutory . . . authority," or not in "observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), (C), (D).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-06505-SK Date: February 14, 2025

Title Network Optix Inc., et al. v. Marco Rubio

*First*, the Secretary claims that the court lacks jurisdiction over the § 706(1) claim because INA § 104, 8 U.S.C. § 1104(a), divests him of any official authority to decide visa applications as head of the State Department. (ECF 14 at 15-16). "But the requirements for obtaining relief under the APA go to the merits, not to subject matter jurisdiction." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022). And on the merits, APA plaintiffs can "properly challenge the unreasonable delay they claim to have suffered through suit against the Secretary and Department of State." *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 89 (D.D.C. 2022). The Secretary's argument fares no better even if it is viewed in Article III standing terms (under the redressability element). "No one doubts that the decision to grant or deny a visa application is left exclusively to consular officers." *Janay v. Blinken*, 2024 WL 3432379, at *3 (D.D.C. July 16, 2024); *see* 8 U.S.C. §§ 1101(a)(9), (16); 1201(a). "The question here, however, is whether the Secretary could, if ordered by the Court, ensure that the relevant consular officer renders a final decision on [plaintiff's] visa application—up or down—within a reasonable period of time." *Janay*, 2024 WL 3432379, at *3. On that question, the Secretary can provide redress because the INA does not preclude him from directing (timely) adjudication of Iuldashev's visa application—so long as the direction does not demand a particular outcome.[5] *See, e.g.*, *Aminzadeh v. Blinken*, 2024 WL 3811153, at *3 (C.D. Cal. Aug. 9, 2024); *Durham v. Blinken*, 2024 WL 3811146, at *3 (C.D. Cal. Aug. 8, 2024); *cf.* 8 U.S.C. § 1253(d) (Secretary has authority to "order consular officers . . . to discontinue granting immigrant visas or nonimmigrant visas" on categorical basis in host country under certain conditions).

---

[5] Contrary to the Secretary's contention, *Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997), does not compel a different conclusion. That case involved a mandamus petition rather than an APA suit, and the relief plaintiffs sought there would have (in all but name) compelled the Secretary (among others not so empowered) to issue a visa. *Id.* at 933; *see Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (Mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes."). In any case, even if the Secretary were right, any jurisdictional defect could be cured by amendment with the naming of a consular official instead of (or in addition to) the Secretary. *See* Fed. R. Civ. P. 15(a)(2); Fed. R. Civ. P. 21. Thus, it serves little to no practical end to dismiss the complaint—with leave to amend no less—for this reason alone. *See, e.g.*, *Mahboubian v. Blinken*, 2024 WL 3659602, at *7 (C.D. Cal. Aug. 1, 2024).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-06505-SK Date: February 14, 2025

Title Network Optix Inc., et al. v. Marco Rubio

*Second*, the Secretary claims (at first anyway) that the court also lacks jurisdiction because there is no mandatory duty to process a visa application after it has been "refused" at the consular interview pending "administrative processing." (ECF 14 at 17–21). But whether a consular official has a duty to act on applications enforceable through APA § 706(1) is likewise not a subject matter jurisdiction question. *See Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021) ("Any deficiencies as to the APA claim go to the merits of that cause of action rather than to the subject matter jurisdiction of the court to consider it."). And even if it were, dismissal for lack of jurisdiction is "not appropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1249 (S.D. Cal. 2024) (cleaned up). To his credit, the Secretary thus concedes (in his reply) that whether consular officials had—and then discharged—a mandatory duty enforceable through § 706(1) is a question to be answered under Rule 12(b)(6), not under Rule 12(b)(1). (ECF 18 at 7 n.1). So construed, the Secretary's argument still does not defeat plaintiffs' § 706(1) claim at the complaint stage.

For starters, the Secretary does not and cannot seriously dispute (as nearly all federal courts agree) that consular officials have a statutory duty to adjudicate visa applications within a reasonable time. *See Vaz*, 33 F.4th at 1135; *Khan v. Johnson*, 65 F. Supp. 3d 918, 924–25 (C.D. Cal. 2014); *Wang v. Chertoff*, 676 F. Supp. 2d 1086, 1097 (D. Idaho 2009); *see also Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 64 (2004) (APA complaint states a claim under § 706(1) when it "asserts that an agency failed to take a *discrete* agency action that it is *required to take*."). As relevant here, under INA § 222(d), "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). And under the APA, "each agency shall proceed to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b).[6] The Department's regulations also require that nonimmigrant visa

[6] Unlike in the unpublished decision in *Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir. July 24, 2024), which the Secretary invokes often, plaintiffs here do not claim, like the immigrant applicant in *Karimova* did, that "Section 555(b)—and *only* Section 555(b)" is the statute that imposes a mandatory duty of final visa adjudication on the merits. *Id.* at *3.

applications be "properly and promptly processed in accordance with the applicable regulations and instructions." 22 C.F.R. § 41.106. At the complaint stage (if not beyond), all that is enough to allege a plausible legal theory of mandatory duty enforceable under § 706(1) of the APA. *See, e.g., Infracost*, 732 F. Supp. 3d at 1252 (S.D. Cal. 2024); *Kiani v. Blinken*, 2024 WL 658961, at *4 (C.D. Cal. Jan. 4, 2024). A duty is no less a duty just because it doesn't come with a timetable; it just may mean that proving dereliction of that duty will be quite difficult in most cases.

What the Secretary thus mainly argues instead is that the consular official discharged his duty to adjudicate Iuldashev's application—once and for all as a legal matter—when he "refused" to issue the visa at the end of the interview. Never mind that (according to the complaint) the consular official didn't say that Iuldashev was ineligible for the visa on a substantive ground or that the visa application itself was incomplete or deficient. Also never mind that (according to the complaint) the consular official asked for more information and explained that Iuldashev's application needed further "administrative processing"—after which (as the Secretary doesn't deny) the visa could still be issued. By the Secretary's account, though, any interpretation of these events as something other than official discharge of the consular officer's sole legal duty under the INA (and Department regulations) would imply that consular officers must adjudicate visa applications "a second time, which they have no duty to do in general or within any particular timeframe." (ECF 14 at 19). But that argument presupposes a factual predicate that the complaint nowhere alleges: that the consular official was necessarily denying the visa (as a matter of law) just because he didn't issue the visa on the spot (as a matter of fact). And that assumption—aside from being circular—cannot be construed against plaintiffs on a motion to dismiss without considering disputed evidence beyond the pleadings. (Peterson Decl., ECF 14-1; Wu Decl., ECF 17-1). So if this disputable proposition is the crux of the Secretary's contention for dismissal under Rule 12(b)(6), the "parties must be given a reasonable opportunity to present all the material that is pertinent" to that issue with the benefit of discovery.[7] Fed. R. Civ. P. 56(d).

[7] For instance, it is not obvious at this stage when a consular official is supplementing an existing application, reconsidering a rejected application, or "overcoming" a prior visa refusal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-06505-SK Date: February 14, 2025

Title Network Optix Inc., et al. v. Marco Rubio

*Third*, the Secretary argues that judicial review of plaintiffs' APA claims is foreclosed by the doctrine of consular nonreviewability. (ECF 14 at 21-23). But that judicially created doctrine does not affect the court's subject matter jurisdiction to review an APA claim. *See Dep't of State v. Munoz*, 602 U.S. 899, 908 (2024); *Allen v. Milas*, 896 F.3d 1094, 1102–02 (9th Cir. 2018). And it does not bar an APA claim when it "challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion." *Patel*, 134 F.3d at 931–32. Thus, consular nonreviewability never enters the picture when, as here, plaintiffs are not challenging a consular official's ultimate discretionary decision to grant or deny a visa application on the merits, but his failure to make that decision—at all or within a reasonable time. *See, e.g.*, *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 292 (D.D.C. 2016) ("Accordingly, because the applications . . . remain in 'administrative processing' and, therefore, have not been finally refused, the doctrine of consular nonreviewability does not bar their claims.") (citing, among other cases, *Patel*, 134 F.3d at 932). Besides, this argument too presumes the very fact that plaintiffs contest: that the consular official arrived at an unreviewable discretionary decision on the merits of Iuldashev's visa application. Taken as true and construed in plaintiffs' favor, the complaint alleges that the consular official who interviewed Iuldashev never officially denied his visa application, at least not in any legally unreviewable sense. At most, as the complaint alleges, the consular officer deferred what might eventually become an unreviewable merits decision pending the outcome of further "administrative processing" of the application. In those situations, the consular nonreviewability doctrine is no bar to review of a § 706(1) claim since it is plausible to allege that the visa application has only been "provisionally refused pending a final decision." *Al-Gharawy v. U.S. Dep't of*

---

*See* 9 Foreign Affairs Manual (FAM) § 306.2-2(A)(a); 9 FAM 403.2-7(A); 9 FAM 403.10-4; 22 C.F.R. § 40.201(a)(1); 22 C.F.R. § 41.103(b)(2). Perhaps understanding what these procedures mean exactly, and how they are functionally different or identical, will matter. But for now, the premise of the Secretary's position—that his consulars have no duty to decide any application a "second time"—doesn't help much, since any applicant could engineer the same result by filing a second or subsequent application, triggering anew the default duty to decide.

*Homeland Sec.*, 617 F. Supp. 3d 1, 11 (D.D.C. 2022); *see, e.g.*, *Patel*, 134 F.3d at 933 (distinguishing "provisional refusal" from "final decision"). So too here.[8]

*Fourth*, the Secretary contends that, even if reviewable, plaintiffs' claim under § 706(1) should be dismissed because the complaint fails to allege any prima facie unreasonable delay in the adjudication of Iuldashev's visa application. (ECF 14 at 24–29). By the Secretary's estimation, the six months between Iuldashev's interview and the filing of the complaint is per se not an unreasonable length of time for administrative processing. To decide when administrative delay becomes unreasonable, courts typically apply the so-called "*TRAC* test" articulated in *Telecommunications Rsch. and Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984). But that analysis requires weighing and balancing at least six non-exhaustive and fact-intensive considerations:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking

[8] To be sure, some courts have resisted the idea that a visa application can ever be deferred or provisionally denied pending further administrative processing. As a result, those courts have found no mandatory enforceable duty to adjudicate visa applications further after the consular interview if no visa is issued by the end of that interview. *See, e.g.*, *Ramizi v. Blinken*, 2024 WL 3875041, at *10 (E.D.N.C. Aug. 14, 2024) (collecting cases). But plenty of other courts—and perhaps the majority by now—have held the opposite. *See, e.g.*, *Stetsiuk v. Mesquita*, 2025 WL 405408, at *4 (D.D.C. Feb. 5, 2025); *R2 Techs. Corp. v. Rubio*, 2025 WL 436306, at *4 (D.D.C. Feb. 7, 2025). At root, the Secretary's invitation is to pick his favored side of this judicial debate. (ECF 14 at 17-18). The court demurs. At this complaint stage, the body of caselaw supporting plaintiffs' APA claim under § 706(1) provides more than ample legal support to plausibly allege unreasonable delay or unlawful withholding of Iuldashev's visa adjudication.

behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138–39 (9th Cir. 2020) (citing *TRAC*, 750 F.2d at 79–80). The pleading stage is therefore not generally a suitable time to engage in such fact-bound analysis. *See, e.g.*, *Tamjidi v. Blinken*, 2024 WL 4328813, at *5 (C.D. Cal. Aug. 27, 2024); *Tailawal v. Mayorkas*, 2022 WL 4493725, at *3 (C.D. Cal. Aug. 18, 2022); *Kang v. Jaddou*, 2022 WL 2189634, at *2 (C.D. Cal. Apr. 25, 2022); *Dong v. Cuccinelli*, 2021 WL 1214512, at *2–3 (C.D. Cal. Mar. 2, 2021); *Gupta v. Bret*, 2008 WL 11337412, at *4 (C.D. Cal. May 30, 2008).

But even under an early *TRAC* analysis, plaintiffs have at least plausibly alleged that they will be prejudiced by further inaction or indefinite delay in the final adjudication of Iuldashev's visa application. *See Air Line Pilots Ass'n, Int'l v. C.A.B.*, 750 F.2d 81, 86 (D.C. Cir. 1984) (Each "claim of unreasonable delay" presents "its own slightly different set of factors to consider" and "must be analyzed according to its own unique circumstances."). The validity of H-1B visas is generally limited to the period of employment authorized by the approved H-1B visa petition—usually three years. *See* 8 C.F.R. § 214.2(h)(15)(ii)(B)(1). If that is right, Iuldashev's visa—even if issued now—would only permit him to stay and work in the United States under that visa until July 2025 (since USCIS approved Network Optix's petition in July 2022). Perhaps there would still be other important benefits to getting that visa even if late, but the looming deadline a few months from now seems far more pivotal to the unreasonable delay question than the absolute number of months that has passed between Iuldashev's visa interview and the filing of this APA suit.[9] Besides, the Secretary cannot have it both ways: either, the passage of time hasn't been long enough for plaintiffs to sue, which presumes that the Department must make a decision sometime in the (very) distant future that is not "unreasonable"; or, the passage of time doesn't matter at all because plaintiffs have no enforceable expectation that the Department will ever make a decision

[9] At oral argument, the Secretary had no answer for this potential dilemma. (ECF 24 at 112). Nor does there appear any consideration of the fact that, before he left the United States, Iuldashev had already been working in California for Network Optix under a prior H-1B visa. (ECF 1 at 4, 9–10, 12).

after a "refusal" pending "administrative processing." If the latter understanding is invariably the only logical end to the Department's litigation position, then plaintiffs have at least plausibly alleged that the Department is unlawfully withholding a decision indefinitely (even in perpetuity)—not just delaying for an unreasonable but still finite period.

*Fifth* and not least, the Secretary does not uniquely join issue with plaintiffs' distinct claim for unlawful agency action under § 706(2) of the APA. In the Secretary's view, any § 706(2) claim is analytically redundant of a § 706(1) claim, and so requires no separate discussion.[10] But that is not correct (or at least not always). Like § 706(1), § 706(2) permits judicial review of "agency action" under certain enumerated conditions. Agency action as defined by the APA includes the "failure to act." 5 U.S.C. § 551(13). Put otherwise, the APA eschews any dispositive metaphysical distinction between agency action and *in*action, recognizing sensibly enough for administrative law that an agency's decision *not to act* can still be a reviewable action to be set aside if unlawful. Besides, if the court is to take the Secretary at his word, the Department has taken the relevant final agency action anyway—and the only that matters legally in the Secretary's account: a one-time refusal of Iuldashev's visa at the time of his consular interview. Consular nonreviewability comes into play under this view, of course, since no court can second-guess why the consular official made that decision on the merits, much less reverse it and order the Department to issue the visa instead. *See Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986) ("[T]he consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review."). But consular nonreviewability is not in the picture when a court is asked to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C.

---

[10] If the Secretary has any independent bases to argue for dismissal of the § 706(2) claim on its own terms distinct from the § 706(1) claim, such arguments have been successfully hidden from view that they must be considered waived. *See Khademi v. South Orange County Community College Dist.*, 194 F. Supp. 2d 1011, 1027 (C.D. Cal. 2002) (The court "is neither required to hunt down arguments [the parties] keep camouflaged, nor required to address perfunctory and undeveloped arguments.").

§ 706. Thus, § 706(2) allows judicial review of those questions and permits the court to "hold unlawful and set aside agency action, findings, and conclusions found to be" (1) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (2) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right"; or (3) "without observance of procedure required by law." 5 U.S.C. §§ 706(2)(A), (C), (D).

Taken as true and construed in plaintiffs' favor, the complaint plausibly alleges that treating a "refusal" subject to "administrative processing" as the only pertinent final agency action is neither permitted by the INA nor consistent with the Department's own regulations. The Secretary's contrary interpretation hinges on his view that when a visa is not issued under INA § 221(g)—even when that is the sole professed basis for visa "refusal"—the consulate has made the only agency decision mandated by the INA and required by Department regulations. (ECF 14 at 23; ECF 24 at 111). And that is what the Secretary maintains happened here: Iuldashev's visa application was "refused" under INA § 221(g) alone because "the consular officer determined that additional security screening was required." (Peterson Decl. ¶ 5, ECF 14-1 at 2). Meanwhile, the "security screening is ongoing." (*Id.*). But by plaintiffs' allegations, which must be accepted at this stage, the "mere fact that the Department has chosen to characterize this action as a 'refusal' does not necessarily make it a final decision." *Aminzadeh*, 2024 WL 3811153, at *4. It is plaintiffs' contention that "the focus should be on what is actually happening" instead. *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020).

The Secretary strenuously resists that real-world view in favor of a hyper technocratic one. According to the Secretary's interpretation, the INA and Department regulations permit only a binary choice: grant or deny the visa. (ECF 14 at 20). And to be sure, the Department's policies and practices are nothing if not consistent with that interpretation. *See, e.g.*, 9 FAM § 403.7-3 ("Once an application has been made . . . , you must either issue the visa or refuse it. You may not temporarily refuse, suspend, or hold the visa for future action."). So if an applicant leaves an interview essentially without a visa in hand, the visa application must be categorized as "refused" (since a visa hasn't been given), or else the consular official has not discharged her statutory duty.

But that forced false choice is the Department's own invention, it is not dictated by the INA.[11] The INA instead requires that consular officials "adjudicate" a visa application. *See* 8 U.S.C. § 1202(d). The Secretary mistakes the necessary outcomes of such required adjudication—grant or denial of the application—with the statutory requirement of adjudication itself. But adjudication means any "agency process for the formulation of an order" that is, in turn, the "whole or a part of a final disposition" of a matter (other than rulemaking) presented to the agency for decision. 5 U.S.C. §§ 551(6), (7). That is bureaucratese for a simple proposition: when an agency must adjudicate an application, it necessarily engages in various administrative tasks on the way to a final decision of the application. In other words, the duty to adjudicate encompasses not only the eventual grant or denial of an application, but also (what could be described as) the "administrative processing" necessary to make the ultimate grant or denial decision at the end of the adjudication. Nothing in the INA or related regulations unnaturally constrains consular officials to treat visa adjudication as a figurative one-time flip of an on-off switch during a single visit with an applicant—no matter what their policies and practices may say or imply. *See Scales v. INS*, 232 F.3d 1159, 1166 (9th Cir. 2000) (Agency interpretations in policy statements, manuals, and guidelines "lack the force of law."). Nor do they preclude the Department—across the board—from deferring or conditioning final decision on applications pending "administrative processing" in the normal course of adjudicating those applications to completion. *Cf.*, *e.g.*, 9 FAM 601.8-3(B)(5) (distinguishing between "refused applicants" who are those "refused a visa" on

[11] Indeed, by all accounts before March 2020, the State Department publicly used "administrative processing" rather than "refused" on its Consular Electronic Application Center (CEAC) website to classify those visa applications that were provisionally denied pending administrative processing. *See* Visas: CEAC Case Status Change (March 5, 2020). That only changed in March 2020, however, with the public announcement that applications previously classified under "administrative processing" would show on the CEAC website as "refused." It was probably no coincidence that this technical change in nomenclature happened amid the unprecedented Covid-19 pandemic, when workers, offices, and resources were strained worldwide. But at the same time, the written notice of this "administrative change," while legally intended "to more accurately communicate case status to applicants," also made clear that the reclassification would cause no practical change to the "applicants' actual cases." *Id.*

grounds *other than* "INA 221(g) for 'administrative processing'" and "pending applicants" whose visas were refused subject to "administrative processing").

To the contrary, INA § 221(g) and the Department's regulations contemplate, rather than prohibit, that sensible interpretation of a consulate's duty to adjudicate. Section 221(g) outlines a tripartite decision matrix for when a consular officer must refuse to issue a visa. It provides (in pertinent part) that no visa may be issued if:

> "(1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa" under INA § 212, 8 U.S.C. § 1182, or any other provision of the INA,
>
> "(2) the application fails to comply with the provisions of [the INA], or the regulations issued thereunder," or
>
> "(3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa" under INA § 212, 8 U.S.C. § 1182, or any other provision of the INA.

8 U.S.C. § 1201(g). It is important to differentiate between the three distinct types of § 221(g) denials enumerated in the statute. The first under § 221(g)(1) directs a consular officer to deny a visa if ineligibility is apparent on the face of the application and supporting documents. But it isn't itself a ground of ineligibility; instead, it cross-references other sections of the INA that might make an applicant ineligible. Section 221(g)(2), by contrast, addresses situations where the application itself fails to meet the procedural requirements of the INA or related regulations. This subsection is focused on the application itself, not the applicant's inherent eligibility. Naturally, a consular official must be able to deny a visa if the application paperwork is not compliant. According to the Department's interpretation of this subsection, typical examples of application noncompliance include (as one might expect) submitting an incomplete application, failing to provide required documents or biometric data, not paying the necessary application fee, refusing to be fingerprinted, not swearing or affirming the application, and the like. *See* 22 C.F.R. § 40.201.

Finally, § 221(g)(3) comes into play when the consular officer obtains information—beyond the application itself—indicating that the applicant is ineligible for a visa on substantive grounds. Like its counterpart in § 221(g)(1), this subsection isn't itself a ground of ineligibility but directs the consular officer to deny a visa if she "knows or has reason to believe" that the applicant is ineligible under one of the cross-referenced sections of the INA. This third ground for refusal presupposes, however, that factual investigation beyond the application has been conducted to arrive at the knowledge—or at least the reasonable belief—of the applicant's ineligibility. But "reasonable belief" is not reasonable suspicion or expert guesswork. As the Department's regulations explain, the "term 'reason to believe', as used in INA 221(g), shall be considered *to require a determination based upon facts* or circumstances which would lead a reasonable person to conclude that the applicant is ineligible to receive a visa as provided in the INA and as implemented by the regulations." 22 C.F.R. § 40.6 (emphasis added). Section 221(g)(3) therefore contemplates that a consular officer may conduct any investigation that might reveal ineligibility not otherwise apparent on the face of an application that is procedurally in order. But § 221(g)(3) does *not* say that when such investigation is underway, the visa application has been statutorily denied—that simply couldn't be true (logically, sequentially, or rationally) until after the consular official acquires the antecedent knowledge or predicate reasonable belief of ineligibility.

That precedent condition is not only intrinsic to the text and structure of INA § 221(g), but presumed necessary by the Department itself, which specifies how a refusal under § 221(g)(3) must be handled after the investigation:

> When a consular officer *knows or has reason to believe* a visa applicant is ineligible and refuses the issuance of a visa, he or she must inform the alien of the ground(s) of ineligibility (unless disclosure is barred under INA 212(b)(2) or (3)) and whether there is, in law or regulations, a mechanism (such as a waiver) to overcome the refusal. The officer shall note the reason for the refusal on the application. Upon refusing the nonimmigrant visa, the consular officer shall retain the original of each document upon which the refusal was based, as well as each document indicating a possible ground of ineligibility, and should return all other supporting documents supplied by the applicant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-06505-SK Date: February 14, 2025

Title Network Optix Inc., et al. v. Marco Rubio

22 C.F.R. § 41.121(b)(1) (emphasis added). Again, as this regulation makes clear, § 221(g)(3) is not itself the statutory basis for ineligibility, but just one of the two methods to determine whether another ground of substantive ineligibility exists—based on additional investigation, though, rather than just what appears on the face of the application.

In short, the three subsections in INA § 221(g) work together in a logical and sequential fashion but each serves a distinct purpose in the overall visa adjudication process. First, a consular officer must look at the visa application and any supporting documents to ensure it meets all procedural requirements. If it doesn't, the officer can deny the visa invoking § 221(g)(2). Second, if the application is complete, accurate, and otherwise procedurally compliant, the consular officer must evaluate whether any substantive ground for visa ineligibility is apparent on the face of the application. If she finds such apparent ineligibility, the application may be denied in accordance with § 221(g)(1)—but the basis for ineligibility itself resides in some other provision of the INA, not in § 221(g)(1) itself. Third and last, even if the application otherwise shows no facial ground of ineligibility, the consular officer may conduct any further investigation—including security checks and the like—needed to determine eligibility in accordance with § 221(g)(3). But the denial or grant of the visa that follows under this last provision does not—indeed cannot—happen until the consular officer obtains knowledge or reasonable belief of the applicant's ineligibility based on extrinsic information beyond the application. *See* 22 C.F.R. § 40.6. After all, the adjudication of an application must in the end be about determining eligibility for the requested visa—even if intermediate administrative acts and investigations must take place beforehand. *See*, *e.g.*, 9 FAM 403.7-2 ("Adjudicating officers have the responsibility to . . . conduct as complete a clearance as necessary to establish the eligibility of an applicant to receive a visa."). It cannot be about just complying with some misplaced hyper-technical obligation to reflexively refuse or grant a visa at any moment, let alone just by the end of a visa interview. *See generally* 9 FAM 403.10-4 ("It is the policy of the U.S. Government to give the applicant every reasonable opportunity to establish eligibility to receive a visa. This policy is the basis for the review of refusals at consular offices and by the Department. It is in keeping with the spirit of American justice and fairness.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-06505-SK Date: February 14, 2025

Title Network Optix Inc., et al. v. Marco Rubio

Within that statutory scheme, then, the consulate's decision not to issue Iuldashev a visa at the end of his interview by invoking "INA § 221(g)" doesn't by itself reveal which subsection of § 221(g) is at play. But the complaint's allegations (not to mention the Secretary's own evidence) provide the likely answer. If § 221(g) were the sole basis for refusal, as it apparently was, it had to be based on subsection 221(g)(2) for application noncompliance, since that is the only statutory ground listed in § 221(g) as a standalone basis for visa denial. To be sure, the consular officer evidently asked for "additional necessary information" at the end of Iuldashev's interview, which is the officer's prerogative to demand if he "believes that the information provided in the application is *inadequate to permit a determination of the alien's eligibility* to receive a nonimmigrant visa." 22 C.F.R. § 41.103(b)(2) (emphasis added). But then "[a]ll documents required by the consular officer" which he considers "necessary to establish the alien's eligibility to receive a nonimmigrant visa" are constructively made part of the visa application itself and "shall be considered" by the consular officer. 22 C.F.R. §§ 41.103(b)(2), 41.105(a)(1); *see* 22 C.F.R. § 41.102(a). And a consular officer's obligation to "issue" or "refuse" the visa can arise only after "a visa application has been *properly completed* and executed in accordance with the provisions of the INA and the implementing regulations." 22 C.F.R. § 41.121(a) (emphasis added). But the consular officer here (according to the complaint) said nothing about the application being incomplete or deficient at the interview. Nor did he suggest that the application was incomplete or deficient once Iuldashev supplied the requested additional information right after the interview. To the contrary, according to Department practices, the consular officer in that situation "should find" that the applicant "has overcome a refusal under 221(g)" once the "additional evidence is presented." 9 FAM 306.2-2A(a).

So if the complaint's allegations (and the Secretary's own evidence) plausibly establish that INA § 221(g)(2) could not have been the basis for the visa refusal, it had to have been based on either § 221(g)(1) or (g)(3). Neither of those subsections, however, is its own inherent ground of ineligibility; they are instead the two paths by which such ineligibility can be found elsewhere in the INA. But the consular officer here (again according to the complaint) never said that Iuldashev was apparently ineligible for a visa on the face of the application and its supporting documents. *See* 8 U.S.C. § 1201(g)(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-06505-SK Date: February 14, 2025

Title Network Optix Inc., et al. v. Marco Rubio

That can only leave, then, INA § 221(g)(3) as the statutory path for visa denial. But even according to the Secretary's own evidence, the consular officer—at the time of the interview—couldn't have known or had "reason to believe" (as that term of art is defined by Department regulation) that Iuldashev was ineligible for a visa under some other provision of the INA. After all, that is presumably why he needed to perform further investigation at all including more "security screening"—to reach a final eligibility determination. Thus, at most, the consular officer may have been giving *notice* of the possibility of a visa denial under § 221(g)(3), but nothing in the statute countenances the Secretary's counter-textual (and counterintuitive) view that the decision to pursue "administrative processing" was itself a statutory refusal under § 221(g) cutting off any possibility for plaintiffs to even sue under the APA. Besides, even if such a strained interpretation holds up, plaintiffs still plausibly allege that the Department failed to follow its own "refusal procedures" under 22 C.F.R. § 41.121(b)(1) or its secondary refusal "review" procedures under 22 C.F.R. § 41.121(c). (ECF 24 at 118-19). If nothing else, those are colorable claims that can be pursued under APA § 706(2).[12]

[12] The court recognizes that the Secretary interprets quite differently what each of these regulations requires of the Department, especially the refusal review procedure that facially suggests refusals must be reviewed within 120 days. *See* 9 FAM 403.12-3(A). But with no evidence to resolve the parties' competing views, the court cannot say on the pleadings alone whether it should "afford deference to [the] administrative agency's interpretation of its own regulations," *Oregon Nat. Res. Council Fund v. Brong*, 492 F.3d 1120, 1125 (9th Cir. 2007), or if that "agency's interpretation does not control" because "it is plainly inconsistent with the regulation at issue," *Montana Wildlife Fed'n v. Haaland*, --- F. 4th ----, 2025 WL 225388, at *24 (9th Cir. 2025). At first blush, there is cause to question whether the Department's apparent blanket practice of citing INA § 221(g)—by itself—as a residual, catch-all basis to refuse visa applications for further security screenings is a reasonable interpretation of 22 C.F.R. § 41.121(a). *See, e.g.*, 9 FAM 403.7-3(B)(c) ("You should not use a request for additional documentation as a way to postpone your decision on a case[.] You should use refusals under INA 221(g) for additional documentation sparingly."); 9 FAM 403.2-6(A)(c)(1) ("Using INA 221(g) to avoid decisions or hold open the possibility for reapplication invites abuse."). After all, the only time that § 221(g) can be its own standalone basis for visa refusal is if the application paperwork itself doesn't comply with the INA or related regulations. So when 22 C.F.R. § 41.121(a) generically lists INA § 221(g) among those statutes under which an application may be legally denied, it is perhaps best understand as a reference to subsection 221(g)(2) only. Otherwise, the Secretary's contrary reading of a refusal under § 221(g) alone as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:24-cv-06505-SK Date: February 14, 2025

Title Network Optix Inc., et al. v. Marco Rubio

* * *

For all these reasons, the Secretary's motion to dismiss (ECF 14) is denied. The Secretary is ordered to answer the complaint within 14 days of this order. Meanwhile, the court also sets an expedited scheduling conference hearing at 10 am on March 17, 2025 via Zoom videoconference. The parties' joint report under Rule 26(f) is due no later than seven days before that Zoom hearing.[13]

IT IS SO ORDERED.

---

encompassing also subsections (g)(1) and (g)(3) would render the listings of other INA statutes in 22 C.F.R. § 41.121(a)—including those covering ineligibility based on national security—essentially superfluous. In any event, these and any other questions are unsuited for resolution on a Rule 12(b)(6) motion to dismiss.

[13] The court asks the parties to focus especially on a laser-focused discovery plan that is essential to the parties' strongest claims or defenses. On the one hand, the court understands why the Secretary may want to limit discovery to a certified administrative record, but it also shares government counsel's reasonable concern that such discovery is overinclusive and effectively circumvents the principles behind consular nonreviewability. (ECF 18 at 14; ECF 23 at 2). On the other hand, the court understands why plaintiffs want discovery beyond the administrative record since the material fact questions are less about the merits of Iuldashev's visa application as such (and the unreviewable question whether to grant or deny it) and more about the Department's policies, procedures, and practices around the sequencing, pace, and processing of visa applications more generally (even if limited to the local embassy officials responsible for Iuldashev's visa application). In that sense, the certified administrative record is surely underinclusive for the discovery needs of this case. Luckily, just because the complaint has survived the pleading stage doesn't mean that the proportionality limits on even relevant information under Rule 26(b)(1) are diminished. Those limits must be scrupulously observed here, for the court is sensitive to the delicate balance that must be struck between the reasonable expectation of fair, timely, and transparent agency action with the judicial restraint needed to avoid any encroachment on sensitive nonpublic affairs of state.